UNITED STATES of America,
Plaintiff–Appellee,

v.

John C. MUELLER,
Defendant–Appellant.

No. 89–1589.

United States Court of Appeals,
Fifth Circuit.

May 22, 1990.

338

Philip E. Sanders, Austin, Tex., for defendant-appellant.

Philip Police, Asst. U.S. Atty., LeRoy Morgan Jahn, U.S. Atty., James H. DeAtley, Asst. U.S. Atty., San Antonio, for plaintiff-appellee.

Before KING, GARWOOD, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

On September 10, 1988, Texas state law enforcement officers conducted a search of the premises and vehicles at 4905 Hudson Bend Road, Travis County, Texas, pursuant to a warrant authorizing the officers to search for controlled substances. The affidavit upon which the search warrant was based stated as follows:

... on or about the 10th day of September A.D., 1988, Your affiant received a call in reference to a chemical odor in the area of the Dry Dock Pub located at 4919 Hudson Bend Road, Travis County, Texas, your affiant then who has been a peace officer for over ten years and who is trained and knowledge-able of those chemicals commonly used in the manufacture of Methamphetamine which is a controlled substance, went to Dry Dock Pub located at 4919 Hudson Bend Road, Travis County, Texas. Your affiant then detected a strong chemical odor of those chemicals commonly used in the manufacture of Methamphetamine which is a controlled substance at that location. Your affiant was then able to locate that the chemical odor of those chemicals commonly used in the manufacture of Methamphetamine was coming from the residence, building, out buildings, and or vehicles located at 4905 Hudson Bend Road, Travis County, Texas. As your affiant was checking the above location an unknown White male who lived directly across the fence from 4905 Hudson Bend Road, informed this affiant that the odor the affiant was smelling was that of Methamphetamine and that it was coming from across the fence from 4905 Hudson Bend Road, Travis County, Texas.

The searching officers seized a methamphetamine laboratory in full operation and various weapons on the premises and arrested Joe Segler, Donna M. Sirois, and appellant John C. Mueller. All three were subsequently indicted for manufacture of methamphetamine and various other charges.

The district court denied Mueller's motion to suppress. In accordance with Fed. R.Crim.P. 11(a)(2), and pursuant to a plea bargain agreement, Mueller pleaded guilty to the manufacture of methamphetamine in violation of 21 U.S.C. § 841(a)(1), conditioned on his ability to appeal the denial of his suppression motion. On June 15, 1989, following his filing of various objections to the presentence investigation report (PSI), Mueller was sentenced, at a lengthy hearing, to 240 months' imprisonment, three years' supervised release, a $25,000 fine, and a $50 special assessment.

I.

Mueller argues that much of the evidence used against him was obtained in an illegal search or seizure in violation of his constitutional rights and thus that the district court erred in denying his motion to suppress such evidence. In particular, he asserts that the warrant under which the officers searched his residence lacked probable cause, that the officers did not act in good faith in following the warrant, and that he was improperly denied an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

All of Mueller's contentions revolve around three allegations of factual deficiencies in the affidavit supporting the warrant: first, that the naming of the addresses of the residence and of the Dry Dock Pub were not sufficiently specific; second, that Officer Hinkel, upon whose affidavit the warrant was issued, did not sufficiently establish his ability and expertise to identify by smell the methamphetamine that he reported having detected; third, that any odor smelled by the officer could not have been connected with the residence searched. In support of this third contention, Mueller presented the trial court with the affidavit of an associate professor of meteorology. Based upon data from the National Weather Service and an inspection of the area around the house searched by the officers, the professor concluded that a person standing at the Dry Dock Pub

(where the officer had stated he was when he first detected the odor) "would be very unlikely to detect any odor emitting from 4905 Hudson Road" (the address of the house searched).

### A.

■ Mueller contends, based upon the affidavit's failure to explain how the officer had the expertise and ability to recognize the methamphetamine smell and upon the meteorologist's subsequent affidavit, that the magistrate lacked probable cause to issue the warrant. However,

> [p]rinciples of judicial restraint and precedent dictate that, in most cases, we should not reach the probable cause issue if a decision on the admissibility of the evidence under the good-faith exception of [*United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984),] will resolve the matter.
>
> . . . .
>
> In *Leon*, the Court held that evidence obtained by law enforcement officials acting in objectively reasonable good-faith reliance upon a search warrant is admissible in the prosecution's case-in-chief, even though the affidavit on which the warrant was based was insufficient to establish probable cause. Issuance of a warrant by a magistrate normally suffices to establish good faith on the part of law enforcement officers who conduct a search pursuant to the warrant.... [T]he Court set forth four exceptions to this rule.

*United States v. Craig*, 861 F.2d 818, 820–21 (5th Cir.1988) (citations omitted).

These exceptions from *Leon* are as follows:

(1) if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth.

(2) where the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979);

(3) [where the] warrant [is] based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'

(4) [where the warrant is] so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

468 U.S. at 923, 104 S.Ct. at 3421.

The first exception is discussed in part I.B., *infra*. As to the second, Mueller presents no evidence that the judge abandoned his judicial role. In fact, apart from his assertion that the affidavit did not provide probable cause (which is directed at the third exception), Mueller presents no evidence of *any* error on the judge's part. Nothing suggests that the magistrate had any bias or interest in issuing the warrant, or that he dispensed with his neutral and detached position to become involved in the evidence-gathering related to issuance of the warrant as did the town justice in *Lo–Ji Sales*. See *Lo–Ji Sales*, 442 U.S. at 326–27, 99 S.Ct. at 2324–25.

Nor does the third exception apply. Officer Hinkel, who gave the affidavit that led to the issuance of the search warrant, explained that he was trained and knowledgeable with regard to chemicals used in the manufacture of methamphetamines. In addition to detecting methamphetamine himself, Hinkel was also informed by a bystander that the odor was methamphetamine and was emanating from 4905 Hudson Bend Road. This, together with the officer's own tracing of the odor to 4905 Hudson Bend Road, which was the address of the house later searched, provides sufficient "indicia of probable cause" such that official belief in the existence of probable cause was not entirely unreasonable, especially given the presumption of reliability of the affidavit, *see United States v. May*, 819 F.2d 531, 536 (5th Cir.1987), and the lack of reason to disbelieve the bystander.[1]

---

**1.** *Cf. United States v. Phillips*, 727 F.2d 392, 397 (5th Cir.1984) ("'[W]hen an average citizen tenders information to the police, the police should be permitted to assume that they are

The professor's report cannot cast any shadow upon the good-faith reliance of the officers executing the warrant. Even if the officers did happen to observe that the wind was blowing *away* from the Dry Dock Pub (and the professor's report by no means *proves* that this was the case), it would not be entirely unreasonable for them to assume that, at the time Hinkel made the affidavit, the wind was either blowing in a different direction or was calm enough not to displace the smell. It also would not be entirely unreasonable for the warrant-executing officers to assume that the odor, at the time of Hinkel's investigation, might have been so pungent and concentrated that it would have been detectable *even some distance upwind.*

Finally, the fourth exception does not apply. The warrant stated the correct address of the house to be searched. Even though located on a mailbox across the street rather on the house itself, the stated address, together with the affidavit's statement about the odor coming from the dwelling "across the fence" to the Dry Dock Pub, uniquely describes the house searched, given that the house was directly across the street from the mailbox and was separated from both the Dry Dock Pub and the other residences in the area by a fence.

### B.

The denial of a *Franks* hearing is reviewed *de novo. United States v. DiCesare,* 765 F.2d 890, 895 (9th Cir.1985). In *Franks,* 438 U.S. at 155–56, 98 S.Ct. at 2676–77, the Court declared,

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury

or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

The court explained further,

> In sum, and to repeat with some embellishment what we stated at the beginning of this opinion: There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Id.* at 171, 98 S.Ct. at 2684. *See also United States v. Astroff,* 578 F.2d 133, 135–36 (5th Cir.1978).

Thus, before he is even entitled to a hearing to determine whether false statements were actually made, Mueller must present evidence that makes a "substantial preliminary showing" of falsifications or misrepresentations made intentionally or recklessly in the affidavit. The fact that the addresses in the affidavit were on mailboxes across the street from the house rather than on the house itself not only does not show deliberate falsehood or reckless disregard for the truth, it does not

---

dealing with a credible person *in the absence of special circumstances suggesting that such might not be the case'*" (quoting 1 W. LaFave, *Search*

*and Seizure* § 3.4(a), at 592 (1978))) (emphasis added in *Phillips* ).

even show any falsehood. The address of the pub, even if incorrect (which was not established), would not suggest any reckless disregard for truth, as the Dry Dock Pub could easily be identified without the address itself.[2]

The officer's statement in his affidavit that he had been a peace officer for over 10 years and trained and knowledgeable of those chemicals commonly used in the manufacture of methamphetamine provided a sufficient basis for the magistrate or any other reader of the affidavit to conclude that the officer could reasonably recognize by smell the presence of methamphetamine. Not stating that it was specifically because of his experience that he recognized the smell neither shows that the officer was false in stating he smelled methamphetamine nor establishes intentional or reckless disregard for truth.

The officer stated, first, that he was trained and knowledgeable with regard to chemicals used in the manufacture of methamphetamine and, second, that he detected the chemical odor associated with those chemicals. Taken together, these assertions obviously imply that what enabled the officer to recognize the smell of chemicals used in production of methamphetamine were his training and experience with those chemicals. Moreover, it would be a "reasonable inference," *see United States v. May*, 819 F.2d 531, 535 (5th Cir.1987), to believe, based upon his affidavit, that the officer recognized the smell based upon his experience; the affiant's failure to describe every element of his reasoning process, without more, should not be deemed a material omission.[3]

Mueller attempts to argue, based upon the professor's affidavit, that the officer could not have smelled methamphetamine. The professor stated that, according to National Weather Service reports, a breeze of four to seven knots was blowing in the direction from the Dry Dock Pub toward 4905 Hudson Bend Road during the time of Officer Hinkel's presence in the area. The professor concluded not that the officer could not have smelled the methamphetamine, but only that he would have been "very unlikely" to have done so from the Dry Dock Pub and that "it would even be unlikely that persons in the mobile homes next to the fence would be able to detect any odor emitting from 4905 Hudson Bend Road."

We need not evaluate the meaning of "very unlikely" because, so long as he *did* smell methamphetamine and trace it to 4905 Hudson Bend Road, whether the officer first smelled methamphetamine *at the Dry Dock Pub* or elsewhere will not change the probable cause determination; that is, even if the statement about smelling methamphetamine at the Dry Dock Pub were false, so long as the officer *did* smell methamphetamine later when closer to the residence, the probable cause determination is unaffected by the falsification, and thus Mueller still would not be entitled to a *Franks* hearing unless he could show that even without the meteorologist's "very unlikely" assessment, no probable cause existed.

Therefore, we need only assess the effect of the meteorologist's statement that one would be "unlikely" (rather than "very unlikely") to smell methamphetamine. Not only did the professor conclude merely that one would have been "unlikely" to smell methamphetamine across the fence from 4905 Hudson Bend Road, but he also assumed that wind measurements recorded by the National Weather Service, even though taken at a different location, were the same as those at Hudson Bend Road. Although the professor's "examination ... of the weather maps" led him "to conclude that the above assumption is a valid one," the assumption that the wind was the same at both locations nonetheless evidently rep-

2. Unlike, for example, one of a group of residences, where an exact address would be needed.

3. Although *Franks* itself considered only false statements intentionally or recklessly made, we have subsequently held that *Franks* extends to material omissions made intentionally or with reckless disregard for the truth. *See United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980).

resents a qualification to his judgment of "unlikely." Furthermore, the professor did not specifically compensate for the potential strength of the methamphetamine odor.

A qualified statement that from his position the officer would be "unlikely" to detect an odor emanating from 4905 Hudson Road does not amount to a substantial preliminary showing that he made any misrepresentation in stating that he smelled methamphetamine from across the fence, much less a substantial preliminary showing of intentional or reckless misrepresentation.[4] Where reliable independent evidence indicates that an event did occur, an *ex post* assessment that the event is "unlikely" (merely because *one* particular condition present at the time of the event would have been in itself *a priori* unlikely to occur) is almost without probative weight; that is, in any sequence of many events, at least some "unlikely" happenings will probably occur.

## II.

Mueller also maintains that in executing the warrant, the officers violated his fourth amendment rights by entering the residence unannounced. When the district court below considered Mueller's claim of unannounced entry, it treated his claim as an assertion of a violation of 18 U.S.C. § 3109, the federal "knock-and-announce" rule, and held that Mueller stated no claim because only state officers were involved in the execution of the warrant and section 3109 has been held to apply only to federal officers. The district court also found that there was no analogous Texas state "knock-and-announce" rule, so that Mueller did not allege a violation of state law either. Because on appeal Mueller has not challenged either one of these conclusions,[5] we do not address them.

In *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), the Court considered a case implicating the relationship between the fourth amendment and section 3109, but no majority of the Court reached a definitive conclusion as to whether a violation of section 3109 generally encompasses a fourth amendment violation. Since *Ker*, most of the circuits have followed, although often with certain embellishments, the four-Justice dissent in *Ker*, which contended that a violation of the "knock-and-announce" rule of section 3109 should also be a violation of the fourth amendment.[6]

---

**4.** This situation differs from that in *United States v. Johns*, 851 F.2d 1131, 1133–34 (9th Cir.1988), where the appellant presented affidavits of two chemistry professors who swore that, given the state in which the chemicals were stored in that case, it would have been *impossible* for the warrant affiant to have detected an odor associated with the manufacture of methamphetamine. The professors' affidavits certainly made a substantial preliminary showing of intentional or reckless falsity because, if those affidavits were correct, the FBI agent's affidavit must have been false; whereas, in the instant case, even if the meteorologist is believed, it is still most likely that Hinkel's affidavit is not false.

**5.** The government claims that Mueller has waived his right to present his fourth amendment unannounced-entry challenge on appeal because it was not presented to the district court. While the district court and the government at the suppression hearing seemed to consider Mueller's arguments as directed only toward a statutory violation, in his motion to suppress Mueller stated, "Defendant contends that there was no announcement by the officers that they were officers nor that they had a

warrant and they entered by force. Thus, the entry was unconstitutional under the Fourth Amendment."

In fact, Mueller did *not* mention § 3109 or any Texas statute in his unannounced entry claim. Furthermore, in support of his motion, Mueller cited *United States v. Francis*, 646 F.2d 251 (6th Cir.), *cert. denied*, 454 U.S. 1082, 102 S.Ct. 637, 70 L.Ed.2d 616 (1981), which specifically discusses the fourth amendment dimension to § 3109. While Mueller did not present the fourth amendment claim at the suppression hearing, his counsel, when asked about the unannounced entry claim, stated, "We have already expressed it in our motion and memorandum." This was more than sufficient to bring the fourth amendment claim to the attention of the district court so that it would be preserved on appeal.

**6.** Among those cases finding that a failure to give notice before entry may violate the fourth amendment as well as section 3109 are *United States v. Agrusa*, 541 F.2d 690, 697 (8th Cir. 1976), *cert. denied*, 429 U.S. 1045, 97 S.Ct. 751, 50 L.Ed.2d 759 (1977); *United States v. Valenzuela*, 596 F.2d 824, 830 (9th Cir.), *cert. denied*, 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071

However, we need not delineate the extent, if any, to which the fourth amendment encompasses a notice-before-entry or knock-and-announce requirement, as defendant Mueller has failed to establish that the officers in fact failed to comply with any such requirement under either section 3109 or the fourth amendment.

In *United States v. Gardner*, 553 F.2d 946, 949 (5th Cir.1977), *cert. denied*, 434 U.S. 1011, 98 S.Ct. 722, 54 L.Ed.2d 753 (1978), we held that a defendant has the burden of establishing a prima facie case when asserting a section 3109 claim. Defendant must put into evidence at least some testimony that establishes the factual basis for a claim that section 3109 has been violated. *Id.* We noted that "[t]he burden is not great, and parallels the necessity that a defendant assert a search was conducted without a warrant before the government is forced to prove that the search was reasonable within the confines of the Fourth Amendment." *Id.*

■ We see no reason why *Gardner*'s burden-of-proof requirement for a section 3109 claim should not also apply to unannounced-entry claims brought under the fourth amendment. Indeed, in *United States v. Murrie*, 534 F.2d 695, 698 (6th Cir.1976) (which we cited in *Gardner*), the court placed the prima facie burden on defendant for both section 3109 and fourth amendment unannounced-entry claims. *See also United States v. Wickizer*, 633 F.2d 900, 901 (6th Cir.1980), *cert. denied*, 450 U.S. 935, 101 S.Ct. 1401, 67 L.Ed.2d 370 (1981). Therefore, the government does not have the burden to prove its action was reasonable until Mueller makes a prima

facie case that the alleged unannounced entry actually occurred.

■ Mueller presented as evidence only his affidavit, which stated, "I was in a bedroom and was asleep when the officers came into the house. I did not hear them announce their presence before entering and I believe I would have had they done so." In *Gardner*, 553 F.2d at 949, we explained,

> The record does not show a § 3109 violation. DEA Agent James C. Brown, the arresting officer, when asked what the agent who had unlocked the door had said, replied 'I don't know that he said anything at all.' Neither Agent Brown, nor the defendant, nor the defendant's neighbor, all of whom were present at the scene, testified that the agent failed to give the required announcement. Positive testimony showed that he knocked.

In the instant case, neither Mueller's co-defendant Segler nor anyone else testified that the police failed to knock and announce their presence. Because he was asleep in the back bedroom, Mueller's testimony appears to be as conjectural as that of Agent Brown. While, in the instant case, there was no positive testimony showing that the officers knocked, this should not affect whether Mueller has made a prima facie case. As we decided in *Gardner* that defendant had failed even to put into evidence some testimony that established the factual basis for his claim, so here we decide that Mueller's affidavit was too speculative to meet the burden of making a prima facie case.[7]

(1979); *United States v. Baker*, 638 F.2d 198, 202 (10th Cir.1980); *United States v. Francis*, 646 F.2d 251, 258 (6th Cir.), *cert. denied*, 454 U.S. 1082, 102 S.Ct. 637, 70 L.Ed.2d 616 (1981); *United States v. Nolan*, 718 F.2d 589, 600–02 (3d Cir.1983); *United States v. Andrus*, 775 F.2d 825, 844 (7th Cir.1985). *See also United States v. Mapp*, 476 F.2d 67, 75 (2d Cir.1973) (following *Sabbath v. United States*, 391 U.S. 585, 591 n. 8, 88 S.Ct. 1755, 1759 n. 8, 20 L.Ed.2d 828 (1968), which held that the exceptions to the fourth amendment notice requirement elaborated upon by the dissent in *Ker* were also exceptions to the requirements of § 3109). In dicta, we have also identified § 3109 requirements with those of the fourth amendment. *See United*

States v. Cadena, 585 F.2d 1252, 1264 n. 28 (5th Cir.1978), *overruled on other grounds*, *United States v. Michelena–Orovio*, 719 F.2d 738, 756–57 (5th Cir.1983) (en banc), *cert. denied*, 465 U.S. 1104, 104 S.Ct. 1605, 80 L.Ed.2d 135 (1984).

7. The Ninth Circuit in *United States v. Dicesare*, 765 F.2d 890, 896 (9th Cir.1985), has enunciated a more precise standard for a defendant's burden in challenging the legality of a search under § 3109. In particular, the offer of proof presented must be "sufficiently definite, specific, detailed, and non conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in ques-

## III.

### A. *Drug Quantity Involved.*

■ Mueller contends that the district court erred when it used 8.5 gallons as the relevant amount of methamphetamine for determining the offense level under the drug quantity table. *See* Sentencing Guidelines § 2D1.1. Mueller argues that because much of the mixture was acetone rather than methamphetamine, only the portion that was methamphetamine should have been counted for purposes of calculation on the drug quantity table.

However, in *United States v. Baker*, 883 F.2d 13, 15 (5th Cir.), *cert. denied*, — U.S. ——, 110 S.Ct. 517, 107 L.Ed.2d 518 (1989), we specifically rejected an identical argument and held that the total weight of a liquid containing any detectable amount of methamphetamine would be used. *Baker* also confirmed that there was no due process or equal protection violation in the guideline's calculation of drug quantity based upon the entire mixture rather than upon merely the amount of the controlled substance.

### B. *Firearm Possession.*

■ Mueller argues that the court erred in increasing the offense level by two pursuant to Guidelines § 2D1.1(b) for possession of a firearm during the commission of the offense. The district court's factual conclusion as to whether Mueller possessed a firearm during the commission of the offense for which he was charged is reviewed under the clearly-erroneous standard. *United States v. Otero*, 868 F.2d 1412, 1415 (5th Cir.1989).

■ Officers seized five loaded guns from Mueller's residence when he was arrested. Additionally, a loaded revolver was found in a truck on the premises. As it was established that the truck was controlled by Mueller (as opposed to others in the house), constructive possession of at least this last firearm could be found by the district court.

The upward adjustment for the weapons is to be applied "unless it is clearly improbable that the weapon was connected with the offense." Commentary to Guidelines § 2D1.1; *United States v. Hewin*, 877 F.2d 3, 5 (5th Cir.1989); *see also United States v. Vasquez*, 874 F.2d 250, 251 (5th Cir. 1989). As Mueller was helping to run an illegal drug operation, it was not clearly improbable that the weapon was connected with the offense. *See United States v. Martinez*, 808 F.2d 1050, 1057 (5th Cir.), *cert. denied*, 481 U.S. 1032, 107 S.Ct. 1962, 95 L.Ed.2d 533 (1987) ("[F]irearms are 'tools of the trade' of those engaged in illegal drug activities."). The court's assessment of the two points was not error.

### C. *Acceptance of Responsibility.*

■ Mueller contends the district court erred in not awarding him a two-point reduction in offense level for his acceptance of responsibility. However, in a written statement to the probation office and again orally at the plea hearing, Mueller denied that he had ever made speed or methamphetamine, the charge for which he eventually pleaded guilty and was convicted. Given the especially great deference to the court's determination of acceptance of responsibility, *see United States v. Tellez*, 882 F.2d 141, 143 (5th Cir.1989), the court could have found that the defendant did not acknowledge his responsibility in the criminal conduct.

### D. *Minimal or Minor Participant Status.*

■ Mueller asserts that he should have been granted a reduction in offense level for minimal or minor participant status, if not a downward departure from the guidelines. We review only for clear error a district court's finding as to whether the defendant had an aggravating or mitigating role in the offense under Guidelines § 3B1.1 or 3B1.2. *See, United States v. Mejia–Orosco*, 867 F.2d 216, 221 (5th Cir.), *cert. denied*, — U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989).

■ The thrust of Mueller's argument here essentially is that he was a more

tion." Mueller's affidavit is certainly not non-

conjectural.

minor participant than co-defendant Segler. However, even if Segler was more culpable, that does not imply that Mueller was a "minor" participant. Indeed, Segler's offense level was adjusted upward to account for his leadership role. *Cf. United States v. Farrell*, 893 F.2d 690, 692–93 (5th Cir. 1990) (counting each of two co-defendants as leaders or managers and giving each an upward adjustment, even though one was probably more culpable than the other). In this case the court was not clearly erroneous in finding Mueller a mere average participant while Segler was a leader. Based upon evidence such as Mueller's fingerprints' being on some of the glassware used in methamphetamine manufacturing and Mueller's *living* in a house where methamphetamine was being manufactured, the court could find Mueller to be an average participant.

### E. *Refusal To Depart from the Guidelines.*

We will uphold a district court's refusal to depart from the guidelines unless that refusal was in violation of law. *United States v. Buenrostro*, 868 F.2d 135, 139 (5th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990). Mueller provides no example of any law that is violated by the district court's following the guidelines.

### IV.

Mueller contends that the district court failed to comply at the sentencing hearing with the procedures specified by Fed.R. Crim.P. 32 and Guidelines § 6A1.3. At the sentencing hearing, following the court's request, Mueller and his counsel sequentially presented their objections to the PSI. Upon hearing each, the district court chose to adopt the findings and recommendations of the PSI rather those proffered by Mueller.

### A.

■ The hearing transcript belies Mueller's assertion that he had no opportunity to respond to the court's findings. Mueller had an opportunity to present objections to each finding of the PSI, both in writing prior to the hearing and then again orally at the sentencing hearing.

### B.

■ Mueller also asserts that the court was required to make more detailed findings and justifications of why it found the version of facts in the PSI over those of Mueller. The court is required to resolve specifically disputed issues of fact if it intends to use those facts as a basis for its sentence. *See* Fed.R.Crim.P. 32(c)(3)(D); *United States v. Hurtado*, 846 F.2d 995, 998 (5th Cir.), *cert denied*, —— U.S. ——, 109 S.Ct. 163, 102 L.Ed.2d 133 (1988). However, the district court made a sufficiently specific finding in each instance. Actual findings of the district court at sentencing are reviewed under a clearly-erroneous standard. *See United States v. Sarasti*, 869 F.2d 805, 806 (5th Cir.1989), and the PSI forms the factual basis for the judge's sentencing determination. *See United States v. Burch*, 873 F.2d 765, 767 (5th Cir.1989).

With regard to the drug quantity involved in the offense, the court agreed with Mueller's version of the underlying facts in that most of the 8.5 gallons of liquid was acetone rather than methamphetamine. The disagreement was not over a factfinding, but rather over the legal question of how the guidelines treated a mixture containing a detectable amount of some controlled substance.

As to the offense level increase for firearm possession, again the underlying facts were not disputed, only the ultimate factual conclusion that Mueller possessed the gun in the truck. Because Mueller was undisputedly in control of the truck, actual ownership was not relevant to possession. As Mueller presented no relevant affidavits or evidence in rebuttal, the district court was certainly free to adopt the findings of the PSI without more specific inquiry or explanation. *See United States v. Rodriguez*, 897 F.2d 1324, 1327–28 (5th Cir.1990). The finding of no aggravating or mitigating role under sections 3B1.1 and 3B1.2

does not require any more specific factfindings. *See Mejia–Orosco,* 867 F.2d at 221.

On the issue of acceptance of responsibility, the court adopted Mueller's proposed changes to the factual resume; thus the court did make explicit factfindings. However, the court held that even with these new facts, Mueller did not establish that he had accepted responsibility for his offenses. Finally, a court need not make any factfindings in support of its decision not to depart from guidelines unless such findings would be needed to show the sentence was imposed not in violation of law. *See Buenrostro,* 868 F.2d at 139.

### C.

 Mueller challenges the court's denial of an evidentiary hearing. Under *United States v. Burch,* 873 F.2d at 767–68, and the commentary to Guidelines § 6A1.3, the court has discretion over whether to grant an evidentiary hearing. No testimony or evidence presented by Mueller created any dispute over facts material to his sentence that the court could not resolve without a full evidentiary hearing. Thus, it was within the court's discretion to deny the evidentiary hearing.

### D.

 Mueller proposes that we construe Guidelines § 6A1.3 as requiring that the court resolve disputed facts prior to the sentencing hearing, issue them as tentative findings, and then allow a defendant to dispute those findings at the sentencing hearing. The commentary to this guideline qualifies the requirement for issuing of tentative findings with "where appropriate," thus suggesting the district court has discretion on this matter. Furthermore, section 6A1.3(b)'s "reasonable opportunity for the submission of oral or written objections before imposition of sentence" could be satisfied here by the sentencing hearing itself, as Mueller had the PSI prior to the hearing and thus knew at the time of the hearing of all of the bases upon which the court eventually made its factfindings.

Mueller was given full opportunity to present the court with his written response to the PSI's findings and later to supplement his response with oral arguments at the sentencing hearing. Because the court merely adopted the PSI's findings, the PSI provided Mueller with adequate notice of all of the issues that the court resolved at the sentencing hearing. Thus, the court complied with the provisions of rule 32 and section 6A1.3. *See United States v. Michael,* 894 F.2d 1457, 1461–62 (5th Cir. 1990).

### E.

 Mueller's contends that the government has not met its burden of proof in establishing its factfindings. However, all of the issues on which Mueller contends the government has not met its burden of proof, except that of firearm possession, are ones as to which Mueller was attempting to establish a basis for a mitigating factor. In such situations the defendant, rather than the government, has the burden. *See United States v. Cuellar–Flores,* 891 F.2d 92, 93 (5th Cir.1989).

The government has met its burden on the firearm possession issue, as it was not disputed that a loaded gun was found in a truck controlled by Mueller, and Mueller did not claim he was unaware of the gun. Given that the offense level increase is to be applied unless it is "clearly improbable" that the weapon was connected with the offense, *see Hewin,* 877 F.2d at 5; *Vasquez,* 874 F.2d at 251, the government has provided adequate evidence to meet its burden where Mueller offered no rebuttal evidence to show the gun was not connected with the offense.

 Mueller is correct in that a sentence based upon erroneous and material information violates due process. *See United States v. Tobias,* 662 F.2d 381, 388 (5th Cir. Unit B Nov. 1981), *cert. denied,* 457 U.S. 1108, 102 S.Ct. 2908, 73 L.Ed.2d 1317 (1982). However, we have placed the burden on defendants to demonstrate that the district court relied on materially untrue information. *See United States v.*

*Flores,* 875 F.2d 1110, 1113 (5th Cir.1989). Mueller has made no such showing.

AFFIRMED.