953 F.2d 640
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James A. MUSE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Paul D. MUSE, Defendant-Appellant.
 Nos. 91-5142, 91-5143.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 1, 1991.
Decided Feb. 3, 1992.
 
 Appeals from the United States District Court for the Western District of Virginia, at Roanoke. James C. Turk, Chief District Judge. (CR-90-122-R)
 Argued: Neil Edward McNally, Key & Tatel, Roanoke, Va., for appellant Paul Muse; Alton Bishop Prillaman, Jolly, Place, Fralin & Prillaman, Roanoke, Va., for appellant James Muse; Joan Ziglar, Third Year Intern, Roanoke, Va., for appellee.
 On Brief: E. Montgomery Tucker, United States Attorney, Thomas J. Bondurant, Jr., Assistant United States Attorney, Roanoke, Va., for appellee.
 W.D.Va.
 AFFIRMED.
 Before K.K. HALL and WILKINSON, Circuit Judges, and ALEXANDER HARVEY, II, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 In this case two defendants appeal their convictions for various cocaine-related offenses. We find no merit in their contentions, and affirm the convictions.
 
 I.
 
 2
 The charges at issue in this case stem from a series of drug purchases made by an undercover police detective from Robin Webb during June and July of 1990. Detective J.D. Offnick, of the Roanoke City Police Department, made several purchases of cocaine from Webb. On a number of occasions, Detective Offnick drove Webb to the vicinity of James Muse's home, where he watched her enter James Muse's driveway and waited for her to return with the cocaine. During several conversations with Detective Offnick, Webb identified James Muse as her supplier.
 
 
 3
 On June 29, 1990, Roanoke City police obtained a search warrant and conducted a search of James Muse's home. Upon entering the home, police detectives saw James Muse run into the bathroom and throw five plastic baggies, later revealed to contain cocaine, beside the sink. The police seized from the premises 112.9 grams of cocaine, $15,155.54 in cash, a handwritten note with directions on how to cut cocaine, and an assortment of equipment commonly used to prepare cocaine for distribution, including triple beam scales, plastic sandwich bags, and twist ties. In addition, police officers seized two identification cards belonging to Paul Muse and a sign that stated "No Business Today. We Are Out. Thanks, Paul." Police officers then arrested James Muse, and charged him with possession with intent to sell, give or distribute cocaine, in violation of § 18.2-248 of the Virginia Code.
 
 
 4
 On August 15, 1990, a federal Grand Jury indicted James A. Muse, Paul D. Muse, and Robin Webb for their involvement in these cocaine deals. James A. Muse, Paul D. Muse, and Robin Webb were indicted for conspiracy to possess cocaine with intent to distribute and for possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C). James A. Muse and Robin Webb were also indicted for distributing cocaine, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C) and 18 U.S.C. § 2. Then, on September 17, 1990, the state prosecutor entered a motion nolle prosequi, declaring the state's intention to proceed no further in prosecuting the state charges. That motion was granted, and the state ceased its prosecution of the case.
 
 
 5
 The defendants were tried jointly on the federal charges before a jury on October 29, 30, 31, and November 1, 1990. The jury returned a verdict finding James Muse and Paul Muse guilty of conspiracy to possess cocaine with intent to distribute, and finding James Muse guilty of possession with intent to distribute cocaine and of distribution of cocaine. Near the end of the trial, Robin Webb pleaded guilty to possession with intent to distribute and to distribution of cocaine, and the jury found her guilty of conspiracy to possess with intent to distribute. After a number of post-trial motions by James Muse and Paul Muse, judgment was entered against them. They appeal from that judgment.
 
 II.
 
 6
 James Muse and Paul Muse challenge the sufficiency of the evidence to support their convictions. We have reviewed the briefs and the record, heard oral argument, and we conclude that there is substantial evidence to support each of the convictions.
 
 III.
 
 7
 James Muse also challenges his convictions on a number of other grounds. We have considered each of them, and we affirm.
 
 A.
 
 8
 James Muse first argues that the state courts had exclusive jurisdiction over his case, and that the federal courts lacked jurisdiction to interfere while his case was pending in state court. The federal indictment, in Muse's view, should have been dismissed because it was filed while state charges were still pending. We disagree. The filing of state charges against Muse does not operate as a bar to the filing of charges for the same offense by a separate sovereign. If Muse's actions violated both federal and state law, both sovereigns are entitled to prosecute without raising double jeopardy concerns. See Heath v. Alabama, 474 U.S. 82, 88 (1985). As the state charges were never prosecuted, the claim is particularly weak in this case.
 
 B.
 
 9
 James Muse next argues that the district court erred in admitting into evidence the out of court statements of Robin Webb that James Muse was her cocaine supplier. Muse argues that these statements did not fall within the "coconspirator exception" in the Federal Rules, F.R.E. 801(d)(2)(E), because there was insufficient evidence of the existence of a conspiracy. After reviewing the briefs and examining the record, however, we find that there was substantial evidence of a conspiracy and uphold the district court's decision to admit Webb's statements into evidence.
 
 C.
 
 10
 James Muse further argues that the district court erred in refusing to grant his motions for mistrial. Before the trial, the defendants had filed written motions for discovery requesting that the prosecution produce all potentially exculpatory evidence. In response, prosecutors advised the defendants that their fingerprints were not found on any of the drug paraphernalia seized from James Muse's house. During the trial, Muse moved for a mistrial on the ground that the police detectives failed to reveal the additional information that there were unidentified fingerprints of value on the drug paraphernalia. After trial, Muse moved to set aside the jury verdict and for a new trial on the same basis. Muse argues that if defense counsel had known of these fingerprints it could possibly have used them to exculpate him, and that his motions should therefore have been granted.
 
 
 11
 We do not think the district court abused its discretion in refusing to grant Muse's motions, and we affirm. The prosecution's failure to disclose violates Muse's constitutional rights only if the undisclosed evidence is "material"--if it creates a reasonable doubt of guilt that did not otherwise exist. See United States v. Agurs, 427 U.S. 97, 112 (1976). Given the substantial evidence of James Muse's guilt, we do not believe that the "mere possibility" that the unidentified fingerprints "might have helped the defense, or might have affected the outcome of the trial" establishes " 'materiality' in the constitutional sense." See id. at 109-10.
 
 D.
 
 12
 Finally, James Muse challenges the district court's application of the Sentencing Guidelines. First, Muse argues that the district court erred in its calculation of the base offense level under § 2D1.1(a), which provides the framework for the calculation of sentences for various drug-related offenses. Under § 2D1.1, the offense level is related to the quantity of the drug involved. According to the presentence report, the total amount of cocaine involved in this case was 264.45 grams. The report found that the amount of drugs involved in sales through Robin Webb and seized in the search totaled 112.9 grams. In addition, the report treated the money seized ($15,155) as proceeds of drug sales, and converted that money into the amount of cocaine it represented at the going rate ($100 per gram, according to the report)--151.55 grams. The district court apparently adopted the findings of the presentence report. It found that James Muse was "responsible for in excess of two hundred (200) grams of cocaine," resulting in a base offense level of twenty under § 2D1.1(c)(12).
 
 
 13
 Muse objects, arguing that there was insufficient evidence linking the seized money to drug sales. Thus, Muse argues that only the 112.9 grams should have been used in the calculation of his sentence, which corresponds to a base level of eighteen under § 2D1.1(c)(13). We disagree. This court has recently held that the district court may consider "the drug equivalent of the cash seized" in calculating the sentence under § 2D1.1. United States v. Hicks, No. 90-5627, slip. op. at 8 (4th Cir. Oct. 23, 1991). The only issue here is whether the district court properly concluded that the cash seized came from cocaine sales. We are unwilling to overturn the district court's finding absent some proof from Muse that the cash was not the product of cocaine sales. "Without an affirmative showing the information is inaccurate, the court is 'free to adopt the findings of the [presentence report] without more specific inquiry or explanation.' " United States v. Terry, 916 F.2d 157, 162 (4th Cir.1990), quoting United States v. Mueller, 902 F.2d 336, 346 (5th Cir.1990). Muse has failed to carry his burden of showing the inaccuracy of the presentence report. See Terry, 916 F.2d at 162; Mueller, 902 F.2d at 347. He insists the presentence report is rooted in "sheer speculation," but has never made the required "affirmative showing" that the report is inaccurate in linking the money to cocaine sales.
 
 
 14
 Second, Muse argues that the district court erred in imposing a four-level upward adjustment for his role as an organizer or leader of the drug conspiracy under § 3B1.1(a). Under that section, a four-level adjustment applies if the defendant was an "organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Muse contends that the evidence at trial showed that there were at most four participants involved in the conspiracy, and that the upward adjustment was therefore improper. After reviewing the record, however, we believe that the adjustment was appropriate. Substantial evidence was presented that supports the conclusion that Muse was the organizer or leader of the conspiracy, and that the conspiracy either involved five or more participants or was "otherwise extensive."
 
 III.
 
 15
 For the foregoing reasons, the judgment of the district court is
 
 
 16
 AFFIRMED.