# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 10, 2024

Lyle W. Cayce
Clerk

No. 23-20559

United States of America,

*Plaintiff—Appellee*,

*versus*

Rodrigo Santos,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CR-390-1

Before Willett and Douglas, *Circuit Judges*, and Morales, *District Judge*.[*]

Per Curiam:[*]

Rodrigo Santos pleaded guilty to possessing a firearm after having been convicted of a felony, a violation of 18 U.S.C. § 922(g)(1). The district court sentenced him to 17 months' imprisonment and three years' supervised release. Soon after finishing his term of imprisonment, Santos was

---

[*] United States District Judge for the Southern District of Texas, sitting by designation.

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-20559

arrested and pleaded true to six violations of his supervised release. The district court sentenced him to 24 months' imprisonment with no additional supervised release term.

On appeal, Santos argues that his sentence was procedurally unreasonable because the district court relied on clearly erroneous facts. The Government acknowledges that the district court "arguably erred" in describing two facts related to Santos's § 922(g)(1) sentencing but contends that those facts were not material to the district court's sentencing decision.

We agree with the Government that any error in the district court's sentencing order was not material to the sentencing decision. Accordingly, we AFFIRM Santos's sentence.

I

While this appeal centers around Santos's federal indictment and sentence for violation of § 922(g)(1), his criminal record and allegations of other prior crimes are also relevant and are described here.

In 2013, at age 16, Santos was charged as a juvenile and pleaded guilty to unauthorized use of a vehicle, for which he received a sentence of 12 months' probation. In 2014, at age 17, he was charged as an adult and pleaded guilty to unlawfully carrying a weapon, for which he received a sentence of four days' imprisonment. In 2015, at age 18, he was again charged as an adult and pleaded guilty, this time to robbery, and received a sentence of two years' imprisonment.

In April 2017, Santos allegedly murdered a man in the parking lot of an apartment complex. The incident was captured by surveillance footage, one eyewitness identified Santos as the perpetrator, a second witness told police that he heard Santos say he was going to kill the victim, and analysis of Santos's cell phone records showed him using data in the vicinity of the scene

at the date and time of the murder. Santos was indicted and tried for the murder in Texas state court. On May 20, 2021, after the close of the State's evidence, the state-court judge entered a ruling finding the evidence legally insufficient and acquitting Santos.

In June 2017, Santos robbed a victim at gunpoint, stealing a handgun and a gold chain. A few weeks later, when approached by police, Santos affirmatively stated that he was armed, and officers recovered the stolen handgun. As a result, Santos was indicted in Texas state court and pleaded guilty to armed robbery. On September 25, 2023, the state court sentenced him to five years' imprisonment.

The June 2017 robbery and arrest also led to the federal charges at issue in this appeal for possessing a firearm after having been convicted of a felony, in violation of § 922(g)(1). Santos pleaded guilty and was sentenced in federal court in May 2018.

At his § 922(g)(1) sentencing in the district court, the presentence report (PSR) calculated Santos's Sentencing Guidelines range as 57–71 months' imprisonment and not more than three years' supervised release. Santos's criminal history laid out in the PSR included his juvenile conviction in 2013 and his adult convictions for unlawful carrying of a weapon and robbery in 2014 and 2015. Because the state robbery charge for the June 2017 incident was still pending, the PSR did not include it in calculating Santos's criminal history. Nor did the PSR contain information regarding the alleged murder.

Santos raised two objections to the PSR that are relevant to this appeal. First, he objected to the application of U.S.S.G. § 2K2.1(b)(6)(B), which would have increased his base offense level because he used or possessed a firearm in connection with the felony offense of drug trafficking. The district court granted this objection. Second, Santos objected to the

application of U.S.S.G. § 2K2.1(a)(4)(A), which would have increased his base offense level because he had previously been convicted of a crime of violence. The district court overruled this objection.

Having granted one of Santos's objections, the district court recalculated the Sentencing Guidelines range in the PSR as 37–46 months' imprisonment.

The district court also considered motions for downward departure by both the Government and Santos. Santos sought a downward departure under U.S.S.G. § 4A1.3(b)(1), arguing that his criminal history listed in the PSR substantially overrepresented the seriousness of his criminal history because two of the three past offenses were committed before he turned 18 years old. The district court denied Santos's request for downward departure. The Government filed a motion for downward departure under U.S.S.G. § 5K1.1 based on Santos's substantial assistance in their investigation of the gang with which he was involved. The district court granted the Government's request for downward departure.

The district court further adjusted the sentence by 11 months under U.S.S.G. § 5G1.3(b) to account for time already spent in state custody for the then-pending June 2017 robbery charge.

Altogether, the district court imposed a sentence of 17 months' imprisonment and three years' supervised release.

Just a few months after beginning his term of supervised release, Santos committed various violations of his supervised release conditions, such as illegal possession of a controlled substance, failure to report, and failure to participate in mental health and substance abuse treatment. Santos was arrested and pleaded true to six supervised release violations.

No. 23-20559

At sentencing for the supervised release violations, the Sentencing Guidelines range was 5–11 months' imprisonment. But the Government requested an upward variance or departure to 24 months' imprisonment. In support of this request, the Government pointed to (A) Santos's state-court robbery conviction in September 2023; (B) Santos's arrests in 2017 and 2018 for possession of controlled substance and aggravated assault, respectively, for which charges were dropped due to his § 922(g)(1) conviction; (C) his failure to appear at a hearing in the state robbery case; and (D) the April 2017 murder. At the hearing, the Government submitted the investigative report from the murder, introduced into evidence surveillance footage of the murder, and presented testimony from a detective regarding the murder. The Government argued that this evidence showed conduct committed by Santos that did not result in a conviction but went to the factors outlined in 18 U.S.C. §§ 3553(a)(1), (2)(B), and (2)(C): the nature and circumstances of the offense and the character and history of the defendant, the need to afford adequate deterrence, and the need to protect the public.

The district court granted the Government's motion and sentenced Santos to 24 months' imprisonment. The court didn't explain its reasoning at the hearing but later issued an order doing so. The reasoning in that order is the central issue in this appeal.

Santos argues that the order contained two factual errors. Accordingly, he argues, the district court imposed a procedurally unreasonable sentence because it was based on clearly erroneous facts.

II

"When the defendant properly preserves his objection for appeal, we review a sentence imposed on revocation of supervised release under a

'plainly unreasonable' standard . . ..'" *United States v. Warren*, 720 F.3d 321, 326 (5th Cir. 2013) (citations omitted).

Santos concedes that he did not raise an objection below. However, that is because he had no opportunity to do so, given that the district court did not explain its reasoning for imposing the sentence at the hearing and instead issued a written order after-the-fact. Rule 51(b) of the Federal Rules of Criminal Procedure provides that "[i]f a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party." FED. R. CRIM. P. 51(b). Accordingly, we view the error as properly preserved, and we will review the sentence under the "plainly unreasonable" standard.

The "plainly unreasonable" standard involves two steps. *Warren*, 720 F.3d at 326. First, we look for "significant procedural error" by the district court, "such as failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence, including failing to explain a deviation from the Guidelines range." *United States v. Foley*, 946 F.3d 681, 685 (5th Cir. 2020) (quoting *Warren*, 720 F.3d at 326). If the court determines that there has been procedural error, it next asks whether that error was harmless. "[H]armless errors do not warrant reversal." *United States v. Delgado-Martinez*, 564 F.3d 750, 752 (5th Cir. 2009) (citation and internal quotation omitted). "The burden of establishing that an error is harmless rests on the party seeking to uphold the sentence." *Id.* at 753.

Second, we consider the substantive reasonableness of the sentence. *Id.* Santos does not contest the substantive reasonableness of his sentence on appeal.

We review claims of procedural error *de novo* and the district court's factual findings for clear error. *United States v. Harris*, 702 F.3d 226, 229 (5th Cir. 2012) (per curiam) (citations omitted).

## III

Santos argues that the district court committed significant procedural error by selecting his sentence based on two clearly erroneous facts stated in the sentencing order. *See Foley*, 946 F.3d at 685.

First, Santos argues that the district court erred when it stated: "At the time that the defendant was sentenced, the Guidelines advisory sentence recommended was 57–71 months based on a criminal history category of three and an offense level of twenty-three." The district court, as the Government concedes, "arguably erred" in this description of the Guidelines advisory range. True, the PSR prepared for Santos's § 922(g)(1) sentencing stated that the Sentencing Guidelines calculation was "[b]ased on a total offense level of 23 and a criminal history category of III," and accordingly, "the guideline range for imprisonment is 57 to 71 months." But the district court ultimately recalculated the Sentencing Guidelines range to 37–46 months after granting Santos's objection to the application of U.S.S.G. § 2K2.1(b)(6)(B).

Second, Santos argues that the district court erred when it stated that at Santos's § 922(g)(1) sentencing it "departed downward based on the view that the defendant's juvenile record perhaps overstated the confinement necessary for a weapons case." This statement is, as the Government recognizes, incorrect. The district court in fact *denied* Santos's request for downward departure based on his juvenile criminal record and instead granted a departure for substantial assistance under U.S.S.G. § 5K1.1.

However, to prevail on his claim that his sentence was procedurally unreasonable, Santos must also "demonstrate that the district court *relied* on

*materially* untrue information." *Warren*, 720 F.3d at 331 (emphases added) (quoting *United States v. Mueller*, 902 F.2d 336, 347 (5th Cir. 1990)). He fails to meet that burden.

To the extent the district court's order did contain factual errors, they weren't material, and the court didn't rely on them. Instead, the district court's sentencing order clearly stated that its sentencing determination was "[b]ased on the defendant's lack of regard for the rules of supervision" and that he has "shown himself to be violent and reckless and eager to disregard the sanctity of life and the moral or legal restraints of society." The order also clearly stated that "upward departure is appropriate pursuant to 18 U.S.C. § 3553(a)(1) [the nature and circumstances of the offense and the character and history of the defendant] and 2(A)–(C) [seriousness of the offense, respect for the law, and just punishment, deterrence, and protection of the public]."[1] Neither the Sentencing Guidelines range from Santos's § 922(g)(1) sentencing nor the district court's reasons for downward departure are relevant to these determinations. And the mere fact that erroneous statements were included in the order does not outweigh the fact that the court ultimately rested its decision on the § 3553(a) factors. *See Warren*, 720 F.3d at 331 (references to invalid evidence weren't material where court ultimately rested its decision on valid evidence); *United States v.*

---

[1] Although the district court phrased its decision as an upward departure, it was an upward variance because its decision rested on the factors articulated in § 3553(a). *See United States v. Jacobs*, 635 F.3d 778, 782 (5th Cir. 2011) (explaining the difference between a variance and a departure).

To the extent the district court relied on § 3553(a)(2)(A), that was error. *See United States v. Miller*, 634 F.3d 841, 844 (5th Cir. 2011) ("[I]t is improper for a district court to rely on § 3553(a)(2)(A) for the modification or revocation of a supervised release term."). However, it is substantive, not procedural error, to "give[] significant weight to an . . . improper factor." *Id. See also Foley*, 946 F3d at 685. And Santos does not challenge the substantive reasonableness of his sentence in this appeal.

*Espinoza-Rocha*, 540 F. App'x 295, 295 (5th Cir. 2013) (per curiam) (affirming sentence where defendant "fail[ed] to show . . . that any alleged error was material in light of the numerous other factors the district court cited in support of the sentence").

The record provides ample support that the district court's decision relied on Santos's violent and reckless character and criminal history. Indeed, the evidence presented to the district court was primarily regarding Santos's character and criminal history. For example, the Government's motion for upward variance or departure discussed Santos's state-court robbery conviction, prior arrests for possession of controlled substance and aggravated assault, failure to appear at a hearing, and the April 2017 murder. And at the sentencing hearing, evidence focused more on the April 2017 murder, including surveillance footage of the murder and testimony about an eyewitness identification of Santos as the shooter.

Santos argues that the district court couldn't have relied on testimony regarding the April 2017 murder because "the primary purpose of revocation is not to punish conduct, but to sanction the defendant's breach of the district court's trust." But, in a sentencing for supervised release violations, the court must consider the "characteristics of the defendant" and the need "to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), (a)(2)(C). The court may also consider conduct for which a defendant was acquitted in state court. *United States v. Watts*, 519 U.S. 148, 156–57 (1997) (per curiam); *United States v. Gaspar-Felipe*, 4 F.4th 330, 343 n.11 (5th Cir. 2021).

And even if it was for some reason improper for the district court to consider the April 2017 murder, that doesn't mean the district court's ultimate sentencing decision therefore must have instead relied on the incorrect facts. In determining that Santos had a "lack of regard for the rules

of supervision" and had "shown himself to be violent and reckless and eager to disregard the sanctity of life and the moral or legal restraints of society," the district court could have had in mind any number of events in Santos's criminal history and supervised release violations. The district court need not have relied on either the April 2017 murder or the incorrect facts. Santos hasn't shown that the district court's reasoning was otherwise procedurally improper.

Even if Santos had met his burden of showing procedural error, it was harmless. *See United States v. Delgado-Martinez*, 564 F.3d 750, 752–53 (5th Cir. 2009). An error is harmless if the proponent of the sentence (here, the Government) points to evidence in the record showing that "the district court had a particular sentence in mind and would have imposed it, notwithstanding the error made." *Id.* at 753 (citation omitted). The Government points to the district court's order, which stated that the "upward departure is appropriate pursuant to" the § 3553(a) factors. This statement suggests that the district court "had a particular sentence in mind"—that is, the upward variance to 24 months—and would have imposed it based on the § 3553(a) factors, notwithstanding the errors made with respect to Santos's prior sentence. The Government has thus met its burden to show that the alleged errors would not have changed the district court's decision.

In sum, Santos hasn't met his burden to demonstrate that the district court relied on materially untrue information in determining his sentence. And any procedural error that occurred was harmless.

## IV

Santos's sentence was procedurally reasonable. Accordingly, we AFFIRM.