**UNITED STATES of America, Appellant,**

v.

**Richard Lee ALBERTY, Jr., Appellee.**

**No. 71-1198.**

United States Court of Appeals, Tenth Circuit.

Oct. 7, 1971.

Richard A. Pyle, U. S. Atty., and Robert D. McDonald, Asst. U. S. Atty., Muskogee, Okl., for appellant.

Sam Caldwell, Muskogee, Okl., for appellee.

Before PICKETT, HILL and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Richard Lee Alberty, Jr. was indicted under Title 26, U.S.C. §§ 5861(d) and 5871 for unlawful possession of a firearm not registered to him. Alberty filed a Motion to Suppress. He argued that the law of Oklahoma applies in determining the legality of the arrest and seizure. The trial court found that the actions of the two Oklahoma State police officers constituted an illegal arrest of Alberty, in that it was made for a misdemeanor not committed in their pres-

---

ence. The Court found that the shotgun was illegally seized as a result of the illegal arrest. The Government appeals from that order under Title 18, U.S.C. § 3731.

The facts, as stipulated by the parties, are as follows. The Idabel, Oklahoma, police received telephone complaints shortly after 9 o'clock p. m. on April 8, 1970, that a certain motor vehicle was being operated recklessly in the city. About two hours later two city police officers spotted an automobile bearing the general description previously related via the telephone complaints. They had been keeping a general lookout for such a vehicle. A vehicle matching the description had stopped on a roadway in the city. Another vehicle had pulled up and had stopped beside it. It was then approximately 11:00 p. m. As the police officers approached in their vehicle, one automobile drove away. The suspect vehicle then proceeded slowly down the street. The police vehicle followed, flashing its lights dim and bright. The suspect vehicle pulled over and came to a stop. Appellee, Alberty, who had been driving the suspect vehicle, got out of his car leaving the left front door open. He proceeded to walk back toward the police vehicle parked behind. One of the police officers informed Alberty that complaints had been made concerning the reckless operation of a motor vehicle bearing the general description of his vehicle in the city. The other police officer walked up to the open left front door of Alberty's vehicle, looked in, and noticed a sawed-off shotgun laying on the front floorboard. The officer reached in and removed the weapon. The officers placed Alberty under arrest. He was not prosecuted by the State or City.

It is conceded by the Government that under the law of the State of Oklahoma the actions of the two police officers in bringing Alberty under their control, by causing him to stop his vehicle, constituted an illegal arrest under Title 22 Okl.St.Ann. § 196. Furthermore, the Government concedes that Oklahoma case law prohibits admission in evidence of anything seized incident to an illegal arrest. Fields v. State, 463 P.2d 1000 (Okl.Cr.App.1970); Thompson v. State, 444 P.2d 849 (Okl.Cr.App.1968); Catron v. City of Ponca City, 340 P.2d 504 (Okl.Cr.App.1959). The Government contends that: (1) the trial court erred in applying Oklahoma law governing search and seizure, in view of the fact that Alberty was indicted for a federal offense; and (2) for the purpose of determining the admissibility of evidence, the Government should be bound only to comply with the search and seizure requirements of the Fourth Amendment to the United States Constitution and the federal decisions relative thereto, and not with the more restrictive laws of the State of Oklahoma.

The Government cites Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), in support of its argument that the actions of the two Idabel police officers were justified under the "stop and frisk" rule which allows police to bring a person under physical control in a manner not amounting to a technical arrest. The Government argues that in view of the telephone complaints tied to the general description of Alberty's vehicle, and considering the time and circumstances of observance of the Alberty vehicle by the two Oklahoma police officers, they were justified in stopping Alberty's vehicle and in conducting an investigation which constituted less than a formal arrest premised on probable cause.

The Government refers to the so-called "silver platter" doctrine first announced in Lustig v. United States, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949). There the Court held that articles obtained as a result of an unreasonable search and seizure by state officers, without involvement of federal officers, could be admitted against a defendant in a federal criminal trial. That doctrine was later rejected by the Supreme Court in the case of Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). There the Court held that

evidence obtained by state officers during a search which, if conducted by federal officers, would have violated a defendant's immunity from unreasonable searches and seizures under the Fourth Amendment, is inadmissible over the defendant's timely objection in a federal criminal trial, even though there was no participation by federal officers in the search and seizure. In *Elkins* the Court stated:

"In determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out. *The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed.*" (Italics supplied). 364 U.S. at 223–224; 80 S.Ct. at 1447–1448.

And in Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960), the Court remanded to the trial court for determination of the lawfulness of state officers' conduct in accordance with basic principles governing the validity of searches and seizures by federal officers under the Fourth Amendment. There, in a state prosecution, the evidence had been suppressed on the ground that it had been unlawfully seized. The *Elkins* and *Rios* decisions, *supra*, clearly vitiated the Court's holding in United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948) that, in the absence of an applicable federal statute, the law of the state where an arrest without a warrant takes place determines its validity.

Appellee relies upon this court's decision in Sumrall v. United States, 382 F. 2d 651 (10th Cir. 1967), cert. denied 389 U.S. 1055, 88 S.Ct. 806, 19 L.Ed.2d 853 (1968). There we held that state law controls the authority of a state police officer making an arrest without a warrant. The question turned on when the arrest was made. Texas law officers effected an arrest for traffic violations, i. e., speeding and operating with a defective light over the license of the automobile. The driver admitted that he had no driver's permit. An officer searched his person and found a large amount of money which was later traced to an Oklahoma bank robbery. Federal prosecution followed. The Court was not concerned with, nor did it reach the validity of, the "stop and frisk" doctrine laid down in Terry v. Ohio, *supra*.

In Terry v. Ohio, *supra*, the Court was concerned with this narrow question: Whether it is always unreasonable for a policeman to seize a person and subject him to a limited search for weapons unless there is probable cause for an arrest. While emphatically rejecting the notion that a "stop" does not amount to a "seizure" and that a "frisk" does not amount to a "search" within the protective ambits of the Fourth Amendment, the Court nevertheless recognized that " * * * we deal here with an entire rubric of police conduct —necessarily swift action predicated upon the on-the-spot observations of the officer on the beat—which historically has not been, and as a practical matter could not be, subjected to the warrant procedure." 392 U.S. 1, 20, 88 S.Ct. 1868, 1879. The Court stated that the test of reasonableness of police action in relation to Fourth Amendment protective interests must be judged against an objective standard.

"Would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" 392 U.S. 1, 22, 88 S.Ct. 1868, 1880.

The Court rejected the argument that the only time a police officer may detain and search is when he has probable cause to arrest.

This court has held that the test of reasonableness in relation to Fourth Amendment protected rights must be determined by Federal Law even though the police actions are those of state po-

lice officers. United States v. Self, 410 F.2d 984 (10th Cir. 1969); Sablowski v. United States, 403 F.2d 347 (10th Cir. 1968). And, on the issue of seizure, the rule is that incriminating objects which are visible and accessible, falling in plain view of an officer who has a right to be in a position to have the view, are subject to seizure and may be introduced in evidence. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); Chapman v. United States, 443 F.2d 917 (10th Cir. 1971).

Reversed and remanded for rehearing on the Motion to Suppress.