**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Larry Gene MILLER, Defendant-
Appellant.**

**No. 71–1334.**

United States Court of Appeals,
Tenth Circuit.

Dec. 13, 1971.

Rehearing Denied Dec. 7, 1972.

---

3. H.R.Rep.No.91–1656, 91st Cong. 2d Sess. 25 (1970), 3 U.S.Code Cong. & Ad.News (1970) p. 5875.

Jeff R. Laird, First Asst. U. S. Atty., Oklahoma City, Okl. (William R. Burkett, U. S. Atty., Oklahoma City, Okl., with him on the brief), for plaintiff-appellee.

Mac Oyler, Oklahoma City, Okl., for defendant-appellant.

Before LEWIS, Chief Judge, and McWILLIAMS and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Larry Gene Miller appeals from his conviction for unlawful possession of a firearm as defined by 26 U.S.C. § 5845(a) not registered to him in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. §§ 5861(d) and 5871.

Prior to trial, Miller moved to suppress the evidence against him, i. e., the sawed-off shotgun, on the ground that it had been obtained as a result of an illegal search and seizure. Both this motion and Miller's motion for judgment of acquittal at trial were denied. On appeal the sole contention is that Miller's arrest was illegal and that the sawed-off shotgun obtained as a result thereof is not admissible against him.

On September 12, 1970, two Oklahoma City police officers received information over the police radio that a white male driving a 1960 Chevrolet without a hood and colored black except for one white door had fired a shot from a firearm at a certain location in the city. The police officers, in their patrol car, spotted a car meeting the description given about one-half hour later. By means of flashing lights the police stopped the suspect vehicle then operated by Miller. Miller got out of his vehicle and proceeded to walk back toward the police car. Officer Green met Miller. At the same time Officer Robinson, who had walked up to Miller's vehicle, looked through the windshield and saw the hammer, breech and sawed-off stock of the shotgun lying on the front floorboard. He opened the door, removed the weapon and placed Miller under arrest. Miller was not prosecuted in state or municipal courts.

The facts in this case are almost identical to those before this court in United States v. Alberty, 448 F.2d 706 (10th Cir. 1971). There, however, the trial

court granted the motion to suppress. We reversed and remanded for rehearing. In *Alberty, supra,* as here, the arrests and seizures were challenged under Oklahoma law. In both cases the following applied: (a) When the suspect vehicles were stopped by the state police officers, no misdemeanor had been committed in the presence of the officers; (b) the officers did not possess arrest warrants; (c) under the law of Oklahoma the actions of the police officers in bringing the suspect vehicles to stops and thus under their control constituted an illegal arrest; and (d) under these circumstances Oklahoma law forbids the admission in evidence of incriminating objects seized incident to an unlawful arrest.

Under the facts of these cases the state police officers would have been derelict in their duty to the public if they had not done exactly what they did.

Miller argues that United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948) and Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959) control here. These cases stand for the rules that: (a) in the absence of an applicable Federal statute the law of the state where an arrest without warrant takes place determines its validity; and (b) search and seizure cannot be justified on any cause less than that probable cause required of the magistrate who issues arrest or search warrants. As noted in *Alberty, supra,* we believe that certain decisions, culminating with Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), have vitiated these holdings. We shall review these decisions.

The *Di Re* rule was rejected, by implication, in Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). In *Elkins* the Court stated:

"In determining whether there has been an unreasonable search and seizure by state officers (in a federal prosecution), a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out. *The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed."* 364 U.S. at 223–224, 80 S.Ct. at 1447. (Emphasis ours).

Since Mapp v. Ohio, 367 U.S. 643, 81 S. Ct. 1684, 6 L.Ed.2d 1081 (1961), the commands of the Fourth Amendment have been made applicable upon state officers under the Fourteenth Amendment. Accordingly, incriminating objects seized in violation of the Fourth Amendment are inadmissible in state criminal prosecutions. Massey v. United States, 358 F.2d 782 (10th Cir. 1966), cert. denied 385 U.S. 878, 87 S.Ct. 159, 17 L. Ed.2d 105 (1966). And this court has held that in federal prosecutions the test of reasonableness in relation to Fourth Amendment protected rights must be determined by Federal law even though the police actions are those of state police officers. United States v. Self, 410 F.2d 984 (10th Cir. 1969); Sablowski v. United States, 403 F.2d 347 (10th Cir. 1968). *Di Re* applied state law governing arrests in the absence of a controlling federal *statute; Elkins* held that federal courts must apply federal *law,* i. e., a combination of federal statutes and federal common law, in federal prosecutions. And in Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960), remand was made to the trial court for a determination of the lawfulness of state officers' conduct in accordance with basic principles governing the validity of search and seizure by federal officers under the Fourth Amendment. There, in a state prosecution, the evidence had been suppressed.

Here, as in *Alberty,* we are not concerned with the validity of the arrests and seizures measured by Oklahoma law, but rather *when* the arrests took place by federal standards. By that yardstick the question is: At what

point in time was appellant Miller under arrest? This question must be judged and answered, we believe, by the federal law standards applied in Terry v. Ohio, *supra.* There the Court rejected the argument that the only time a police officer may detain and search is when he has probable cause to arrest. The Court recognized that:

> ". . . we deal here with an entire rubric of police conduct—necessarily swift action predicated upon the on-the-spot observations of the officer on the beat—which historically has not been, and as a practical matter could not be, subjected to the warrant procedure." 392 U.S. at 20, 88 S.Ct. at 1879.

Thus, the Court said, the test of reasonableness of police action in relation to Fourth Amendment protective interests must be judged by this objective standard:

> "Would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" 392 U.S. at 21–22, 88 S.Ct. at 1880.

In that case appellant Terry argued that the "stop" and "frisk" conducted by Officer McFadden must be strictly circumscribed by the law of arrest and search and that nothing less than the "probable cause" required for arrest or search warrants could satisfy the commands of the Fourth Amendment. In rejecting these contentions, the Court observed that a rigid and unthinking application of the exclusionary rule "may exact a high toll in human injury and frustration of efforts to prevent crime." 392 U.S. at 15, 88 S.Ct. at 1876. Sanctioning "legitimate and restrained investigative conduct undertaken on the basis of ample factual justification" the Court reasoned that:

> ". . . a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is

no probable cause to make an arrest." 392 U.S. at 22, 88 S.Ct. at 1880.

See also United States v. Sanchez, 450 F.2d 525 (10th Cir., 1971); United States v. Harflinger, 436 F.2d 928 (8th Cir. 1970), cert. denied, 402 U.S. 973, 91 S.Ct. 1660, 29 L.Ed.2d 137 (1971).

Mr. Justice Douglas dissented in Terry v. Ohio, *supra.* He cited Henry v. United States, *supra,* heavily relied upon by appellant Miller here, for the rule that search and seizure cannot be justified for any reason less than "probable cause" which he equated with the "probable cause" requirements to be met by a magistrate before he issues either an arrest warrant or a search warrant. 392 U.S. at 36–37, 88 S.Ct. 1868, 20 L.Ed.2d 889.

During oral argument, appellant Miller invoked Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). He claims that this decision effectively overrules Terry v. Ohio, *supra.* He is mistaken. In *Whiteley* the entire focus went to probable cause requirements for a valid arrest warrant. The Court held that the actions of the arresting officers, who had relied upon police radio information which was based upon an arrest warrant, necessarily depended upon the probable cause sufficiency of the complaint or other information related to the issuing Justice of the Peace. Failing to find such probable cause from the record before it, the Court held that the arrest was illegal and that the incriminating evidence obtained in the subsequent search of the vehicle was tainted. In comparing *Whiteley* with *Terry,* we believe that the language of Mr. Justice Douglas in his *Terry* dissent explains the difference:

> "We hold today that the police have greater authority to make a 'seizure' and conduct a 'search' than a judge has to authorize such action. We have said precisely the opposite over and over again." 392 U.S. at 36, 88 S.Ct. at 1887.

The search conducted in *Whiteley* disclosed incriminating objects only after

the police physically entered the vehicle. The "plain view" doctrine did not apply. Incriminating objects which are visible and accessible, falling in plain view of an officer who has a right to be in a position to have the view, are subject to seizure and may be introduced in evidence. Harris v. United States, 390 U. S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); Chapman v. United States, 443 F.2d 917 (10th Cir. 1971).

We affirm.