**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Wayne Eugene WALKER and Joe Guerra, Defendants– Appellants.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Robert BOUVIER, Defendant–Appellant.**

**Nos. 91–8396, 91–8423.**

United States Court of Appeals, Fifth Circuit.

April 24, 1992.

Rehearing and Rehearing En Banc Denied in No. 91–8396 May 26, 1992.

---

Kenneth E. Houp, Jr., Austin, Tex. (Court-appointed), for Walker.

James Nias, Austin, Tex. (Court-appointed), for Guerra.

Diane D. Kirstein, LeRoy Morgan Jahn, Asst. U.S. Attys., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for U.S. in No. 91–8396.

David A. Wright, Austin, Tex. (Court-appointed), for Bouvier.

LeRoy M. Jahn, Asst. U.S. Atty., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., Mark H. Marshall, Asst. U.S. Atty., Austin, Tex., for U.S. in No. 91–8423.

Before GARWOOD and DEMOSS, Circuit Judges, and DUPLANTIER,* District Judge.

---

\* District Judge of the Eastern District of Louisiana, sitting by designation.

DUPLANTIER, District Judge:

Investigations by the Austin, Texas, Police Department resulted in the discovery of a clandestine methamphetamine laboratory and the arrests of defendants, Robert Bouvier, Joe Guerra, and Wayne Walker, along with others.[1] Defendants were charged in a two-count indictment: count one charged a conspiracy to possess with intent to distribute more than 100 grams of methamphetamine; count two charged possession with intent to distribute methamphetamine. After defendant Bouvier successfully moved to sever his trial, defendants Walker and Guerra were convicted by a jury on both counts of the indictment. Bouvier subsequently entered into a plea agreement with the government, reserving his right to appeal the district court's denial of his pre-trial motions, and pleaded guilty to count one of the indictment.

In these consolidated appeals, all defendants contend that the district court improperly calculated the quantity of methamphetamine seized in determining their base offense levels under the Sentencing Guidelines. They also contend that the district court erred in denying their motions to dismiss based upon violations of the Speedy Trial Act, 18 U.S.C. § 3161, and based upon failure of the indictments to state an offense on the theory that methamphetamine has been "descheduled" as an unlawful drug. As noted hereafter, all three of these contentions are foreclosed by precedent in this circuit. In addition, defendant Walker presents a sufficiency of the evidence claim, and defendant Guerra contends that the district court erred in denying his motion to suppress his confession and other evidence and in calculating his offense level for sentencing. Finding that the district court committed no error, we affirm.

## WEIGHT OF METHAMPHETAMINE IN COMPUTING GUIDELINES

█ In executing a search warrant at a residence where they found the metham-

---

1. Defendants were indicted along with Michael Kelly and Lisa Prinz, who are not appellants in this proceeding.

phetamine laboratory, police seized a quantity of a toxic liquid substance consisting of phenylacetone and a small percentage of methamphetamine. At trial, a chemist testified that the liquid was probably a waste product left over from the methamphetamine manufacturing process. At Bouvier's sentencing hearing, the government stipulated that "over ninety-five per cent of the volume or weight of those liquids" was solvents. Defendants contend that the district court erred in its application of the sentencing guidelines when it used the total weight of the liquid in calculating their offense levels.

This court has consistently rejected arguments similar to defendants'.[2] *See United States v. Mueller*, 902 F.2d 336 (5th Cir. 1990); *United States v. Butler*, 895 F.2d 1016 (5th Cir.1989), *cert. denied*, — U.S. ——, 111 S.Ct. 82, 112 L.Ed.2d 54 (1990); *United States v. Baker*, 883 F.2d 13 (5th Cir.), *cert. denied*, 493 U.S. 983, 110 S.Ct. 517, 107 L.Ed.2d 518 (1989). In *Baker*, the court held that the district court correctly used the total weight of a liquid substance containing methamphetamine in calculating defendant's base offense level, despite that fact that most of the liquid was waste material. *Baker*, 883 F.2d at 14–15.[3]

In *Butler*, the court found that defendant's offense level had been properly calculated based upon thirty-eight and one-half pounds of a liquid consisting of seven to fourteen grams of methamphetamine and the remainder "lye water." *Butler*, 895 F.2d at 1018. The court found that the defendant's argument was foreclosed by the specific language[4] of the guidelines and by the holding in *Baker*. Finally, in *Mueller*, the court rejected defendant's ar-

gument that his offense level had been calculated improperly based upon 8.5 gallons of methamphetamine, because the mixture seized consisted largely of acetone rather than methamphetamine. *Mueller*, 902 F.2d at 345. Again, the court confirmed that *Baker* foreclosed such an argument. *Id.*

Defendants assert that the Supreme Court's recent decision in *Chapman v. United States*, — U.S. ——, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991), effectively overruled *Baker* and its progeny. We disagree. In *Chapman*, the Court held that the weight of the blotter paper used to distribute LSD and not simply the weight of the pure LSD should be used for sentencing, because the blotter paper is a mixture or substance containing a detectable amount of LSD. *Id.* 111 S.Ct. at 1922. The Court found that the words "mixture" and "substance" in 21 U.S.C. § 841(b)(1)(B)(v) and the sentencing guidelines, given their ordinary meaning, would include the blotter paper. *Id.* at 1925–26. It also found that such a sentencing scheme was rational because, although blotter paper is not used to "dilute" LSD, it facilitates the distribution of the drug and makes LSD easier to "transport, store, conceal, and sell." *Id.* at 1928. *Chapman* did not involve methamphetamine; nor did it involve a liquid. Hence, the Court did not speak to the issue of whether the weight of liquid waste containing methamphetamine should serve as a basis for computing a defendant's offense level. Thus, *Chapman* did not overrule *Baker*. To the contrary, much of the language in *Chapman* supports this court's decision in *Baker*.[5]

---

**2.** In the Fifth Circuit, "one 'panel may not overrule the decision, right or wrong, of a prior panel,' ... in the absence of en banc reconsideration or superseding decision of the Supreme Court." *Pruitt v. Levi Strauss & Co.*, 932 F.2d 458, 465 (5th Cir.1991) (citations omitted).

**3.** We note that for sentencing purposes Congress has provided that 100 grams of "methamphetamine" is equivalent to a kilogram of "a mixture or substance containing a detectable amount of methamphetamine," 21 U.S.C. § 841(b)(1)(A)(viii), and 10 grams of "methamphetamine" is equivalent to 100 grams of "a mixture or substance containing a detectable

amount of methamphetamine." 21 U.S.C. § 841(b)(1)(B)(viii).

**4.** The guidelines provide: "Unless otherwise specified, the weight of a controlled substance ... refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." Note following Drug Quantity Table, United States Sentencing Guidelines § 2D1.1.

**5.** The Sixth and Eleventh Circuits have held that liquid waste should not be included in determining the relevant amount of drugs for sen-

In sentencing defendants, the district court correctly used the entire weight of a mixture or substance containing a detectable amount of methamphetamine.

## SPEEDY TRIAL ACT

■ All defendants contend that the district court erred in denying their motions to dismiss based upon violations of the Speedy Trial Act, 18 U.S.C. § 3161. The Act requires that "the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date of the information or indictment...." 18 U.S.C. § 3161(c)(1). The Act also provides for the exclusion of "[a]ny period of delay resulting from other proceedings concerning the defendant, including ... delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion...." 18 U.S.C. § 3161(h)(1)(F).

Defendants were indicted on March 6, 1990. On March 26 they filed a variety of pre-trial motions, which were set for hearing. Before the motions were heard, defendants entered into plea agreements with the government and entered pleas of guilty. In October, the district court rejected defendants' guilty pleas and reset the pre-trial motions for hearing on January 4, 1991. Defendants filed additional pre-trial motions before January 4. Defendants concede that, aside from the twenty days between the filing of the indictments and the first pre-trial motions, all time up until January 3 should be excluded under the Act. The excludability of the delays after January 3 is at issue.

On January 3, the district court *sua sponte* continued the hearing on the pretrial motions until February 19. On February 13, the court continued the hearing *sua sponte* until April 15. On April 18, the court granted the government's motion to continue the hearing based upon a death in the family and hospitalization of the wife of the Assistant United States Attorney handling the case. On April 19, May 6, and May 9, Walker, Bouvier, and Guerra, respectively, filed their motions to dismiss based on violations of the Speedy Trial Act, which the district court denied orally after a hearing on all of the pre-trial motions, on May 20–21. The court filed a written order regarding the rulings a few days later.[6]

Defendants contend that because the delays after January 3 were not requested or caused by them, those delays should not be excluded from computation of time under the Act. An identical argument was rejected in *United States v. Horton*, 705 F.2d 1414, 1416 (5th Cir.), *cert. denied*, 464 U.S. 997, 104 S.Ct. 496, 78 L.Ed.2d 689 (1983). There, defendants attacked the exclusion of the period of time during which motions were pending as unjustified, "asserting that little or none of it was occasioned at their request or on their account." *Id.* "Even assuming this to be so," the court concluded that defendants' argument must fail because the Act is "all but absolute" in excluding time during which motions are pending. *Id.* An exception might be justified in a particularly egregious case, for example, when defendants have presented "repeated unsuccessful requests for hearings or ... other credible indication that a hearing had been deliberately refused with intent to evade the sanctions of the Act." *Id.* Like the defendants in *Horton*, defendants have not presented such a case here. Defendants conceded at oral argument that during the pendency of their motions they neither complained of the delay nor did

---

tencing purposes. *United States v. Jennings,* 945 F.2d 129 (6th Cir.1991); *United States v. Rolande–Gabriel,* 938 F.2d 1231, (11th Cir.1991). Contrary to defendants' arguments, those courts did not find that *Chapman* required such a conclusion. In fact, they distinguished *Chapman* in reaching their conclusions. *Jennings,* 945 F.2d at 136; *Rolande–Gabriel,* 938 F.2d at 1235–36. In addition, the issue of whether liquid waste should be used in weighing drugs seemed to be one of first impression in both circuits. Thus, those courts were not bound by previous decisions in their own circuits, as we are.

6. Trial of Walker and Guerra commenced on June 3, 1991. Bouvier entered his plea of guilty to count one of the indictment on June 24, 1991.

anything to expedite a decision on their motions.

Defendants Walker and Guerra also complain that the district court erred by not following the requirements of section (h)(8)(A) of the Act, which excludes

[a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(8)(A). The district court's orders continuing the hearings *sua sponte* did not contain such a finding, although the court made such a finding with regard to all continuances in its written order denying defendants' pre-trial motions.

■ It is not necessary to determine whether the delays at issue should be excluded under section 8(A), because the delays are specifically excluded by section 1(F) as delays resulting from pre-trial motions. Delays resulting from pre-trial motions " 'will toll the trial clock indefinitely; there is no independent requirement that the delay attributable to the motions be reasonable.' " *United States v. Santoyo*, 890 F.2d 726, 728 (5th Cir.1989), *cert. denied*, 495 U.S. 959, 110 S.Ct. 2567, 109 L.Ed.2d 749 (1990) (quoting *United States v. Kington*, 875 F.2d 1091, 1109 (5th Cir. 1989) (citations omitted)).

### METHAMPHETAMINE NOT DESCHEDULED

■ Defendants also contend that the district court erred in denying their motions to dismiss the indictments for failure to charge an offense: they argue that the Drug Enforcement Administration desche-

duled methamphetamine and failed to follow the proper procedure for rescheduling it. Thus, they reason, methamphetamine is not a controlled substance.

Defendants argue that methamphetamine was descheduled in 1976 when the DEA descheduled Rynal Spray and Vicks Inhaler, products containing diluted isomers of methamphetamine. Defendants' argument is precluded by the Fifth Circuit's recent opinion in *United States v. Martinez*, 950 F.2d 222 (5th Cir.1991). There, the court concluded that, although the DEA descheduled Rynal and Vicks Inhaler, the DEA did not deschedule all forms of methamphetamine, and thus, "methamphetamine is still properly classified as a schedule II controlled substance." *Id.* at 224.[7]

### WALKER'S SUFFICIENCY OF THE EVIDENCE CLAIM

■ Defendant Walker contends that even if methamphetamine is properly scheduled as a controlled substance, the evidence at trial was insufficient to show that the methamphetamine introduced by the government was not one of the substances descheduled by 21 C.F.R. § 1308.-22. *Martinez* makes clear that the substances descheduled by section 1308.22 were Rynal Spray and Vicks Inhaler, which contain specific quantities of controlled substances. The chart contained in section 1308.22 lists excluded nonnarcotic products and designates for each product a company name, trade name, controlled substance contained therein, and specific quantity of the controlled substance. The controlled substances listed in the chart were not descheduled altogether; they were descheduled only in the form of Rynal Spray and Vicks Inhaler.[8]

Thus, the jury's verdict must be affirmed if any rational trier of fact could have found beyond a reasonable doubt that the substance seized was methamphetamine,

---

7. In so concluding, the Fifth Circuit agreed with decisions of the Eighth and Ninth Circuits. *See United States v. Durham*, 941 F.2d 886, 889–90 (9th Cir.1991); *United States v. Roark*, 924 F.2d 1426, 1428 (8th Cir.1991).

8. The current version of section 1308.22 no longer lists Rynal Spray as an excluded product. *See* 21 C.F.R. § 1308.22 (1991).

but not Rynal Spray or Vicks Inhaler. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Carrasco*, 830 F.2d 41, 43 (5th Cir.1987). Considering the evidence in the light most favorable to the government, and accepting all reasonable inferences that tend to support the jury's verdict, we affirm the verdict. *Carrasco*, 830 F.2d at 43–44; *United States v. Marx*, 635 F.2d 436 (5th Cir.1981). Chemist Ralph Owen testified that the methamphetamine at issue was not Vicks Inhaler or Rynal Spray. Likewise, Chemist Anthony Arnold testified that the methamphetamine was not in the form of Rynal Spray or Vicks Inhaler. Given this testimony, a rational trier of fact could have found beyond a reasonable doubt that the methamphetamine introduced by the government was an illegal controlled substance.

## GUERRA'S MOTION TO SUPPRESS

Defendant Guerra contends that the district court erred in denying his motion to suppress the physical evidence obtained as a result of his warrantless arrest, as well as the confessions that he made following the arrest. Guerra contends that the physical evidence and confession were fruits of an arrest that was unlawful under Texas law and, as such, should be suppressed. The government contends that federal law controls, and that probable cause existed for Guerra's arrest, making it valid under federal law. Alternatively, the government asserts that Guerra's arrest was valid also under Texas law.

■ Defendant Guerra's argument to the contrary, the proper inquiry in determining whether to exclude the evidence at issue is not whether the state officials' actions in arresting him were "lawful" or "valid under state law." The question that a federal court must ask when evidence secured by state officials is to be used as evidence against a defendant accused of a federal offense is whether the actions of the state officials in securing the evidence violated the Fourth Amendment to the United States Constitution. This is so because, absent an exception, the exclusionary rule requires that evidence obtained in violation of the Fourth Amendment be suppressed. The exclusionary rule was created to discourage violations of the Fourth Amendment, not violations of state law. *See Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914).

In *United States v. Garcia*, 676 F.2d 1086 (5th Cir.1982), this court excluded evidence that it found to have been obtained pursuant to arrests by state officers because the court determined that the arrests were illegal under Texas law. The Supreme Court vacated *Garcia* and remanded to the panel for reconsideration in light of *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). *See Garcia*, 676 F.2d 1086 (5th Cir.1982), *vacated and remanded*, 462 U.S. 1127, 103 S.Ct. 3105, 77 L.Ed.2d 1360 (1983). *Ross* discusses the Fourth Amendment standards governing a warrantless search of a container in an automobile. "By remanding *Garcia* for reconsideration in light of the fourth amendment standards announced in *Ross*, the Court perforce instructed that state law did not control the case and that the admissibility of evidence depends on the legality of the search and seizure under federal law." *United States v. Mahoney*, 712 F.2d 956, 959 (5th Cir.1983), *cert. denied*, 468 U.S. 1220, 104 S.Ct. 3590, 82 L.Ed.2d 887 (1984). *See also United States v. Mitchell*, 783 F.2d 971, 973 (10th Cir.), *cert. denied*, 479 U.S. 860, 107 S.Ct. 208, 93 L.Ed.2d 138 (1986).

Whether the Fourth Amendment has been violated is determined solely by looking to federal law on the subject. *See California v. Greenwood*, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988). There, the Supreme Court rejected a claim that the Fourth Amendment required suppression of evidence resulting from a warrantless search and seizure that was illegal under California law.

Individual States may surely construe their own constitutions as imposing more stringent constraints on police conduct than does the Federal Constitution. We

have never intimated, however, that whether or not a search is reasonable within the meaning of the Fourth Amendment depends on the law of the particular State in which the search occurs.

*Id.* 108 S.Ct. at 1630. The Fifth Circuit has recognized that

[b]ecause it is a creature of the federal courts and because it ought to be applied in a manner that promotes uniformity in federal cases, federal law must guide our decision whether to apply the exclusionary rule whether or not the legality of the underlying arrest or search turns on state law.

*Mahoney,* 712 F.2d at 959.

We are aware that in *United States v. Di Re,* 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1947), the Supreme Court reversed a federal conviction because it was based upon evidence obtained from an arrest that was illegal under state law. We agree with the Tenth Circuit's conclusion that *Di Re* "was rejected, by implication," in *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960): " 'The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed.' " *United States v. Miller,* 452 F.2d 731, 733 (10th Cir.1971), *cert. denied,* 407 U.S. 926, 92 S.Ct. 2466, 32 L.Ed.2d 813 (1972) (quoting *Elkins,* 364 U.S. at 224, 80 S.Ct. at 1447). *See Mahoney,* 712 F.2d at 959, n. 3. A commentator has suggested that *"Di Re* is simply an instance of the Court utilizing its supervisory power to exclude from a federal prosecution evidence obtained pursuant to an illegal but constitutional federal arrest" by a local police officer. LaFave, *Search and Seizure,* § 1.5(b) at 107. If that is so, *United States v. Payner,* 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980), makes clear that the Court is no longer interested in using its supervisory power to exclude evidence obtained unlawfully but under circumstances not violative of the Fourth Amendment. A federal court should not "use its supervisory power to suppress evidence tainted by gross illegalities that did not infringe the defendant's constitutional rights." *Id.* at 733, 100 S.Ct. at 2445.

■ The Fourth Amendment dictates that a warrantless arrest be based upon probable cause. *United States v. De Los Santos,* 810 F.2d 1326, 1336 (5th Cir.), *cert. denied,* 484 U.S. 978, 108 S.Ct. 490, 98 L.Ed.2d 488 (1987). Thus, in determining whether to suppress the evidence at issue, the inquiry is whether the officers had probable cause to arrest Guerra. "Probable cause 'exists when the facts and circumstances within the knowledge of the arresting officer are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed.' " *Id.* (quoting *United States v. Antone,* 753 F.2d 1301, 1304 (5th Cir.), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985)). "The arresting officer does not have to have personal knowledge of all the facts constituting probable cause; it can rest upon the collective knowledge of the police when there is communication between them." *Id.* (citing *United States v. Webster,* 750 F.2d 307, 323 (5th Cir.1984), *cert. denied,* 471 U.S. 1106, 105 S.Ct. 2340, 85 L.Ed.2d 855 (1985)).

■ It is clear that probable cause existed for the officers to arrest Guerra and that the district court did not err in denying Guerra's motion to suppress. Before Guerra's arrest, Austin Police Department Officer Randall Milstead learned from a confidential informant that Guerra was in possession of precursor chemicals used to manufacture methamphetamine. In connection with the local law enforcement officials, Gray Hildreth, a special agent with the DEA, also investigated allegations that Guerra was selling methamphetamine. A confidential informant told Agent Hildreth that Guerra and defendant Bouvier were associates and that they had taken the informant to a residence where chemicals were stored for the manufacture of methamphetamine.

Jean Messina, who later became a cooperating individual, told an undercover officer that she could provide him with methamphetamine and took the officer to the Silvermine Hotel. While the officer stayed

in the car, Messina went into a hotel room and returned approximately one half hour later with methamphetamine. Messina was arrested. When interviewed, she agreed to cooperate with the officers. She told them that she had received the methamphetamine from Guerra, who was inside the Silvermine Hotel with Ladawn Page. In a telephone call to the hotel room, Messina arranged delivery of additional methamphetamine. The phone call was recorded by the officers with Messina's consent. When Guerra and Page left the hotel, officers arrested them.[9] The facts known to the officers before they arrested Guerra clearly were sufficient to cause a person of reasonable caution to believe that an offense had been or was being committed.

■ Guerra also contends that the district court erred in refusing to suppress his confession on the ground that it was not voluntarily given. After conducting a hearing at which Ladawn Page and several police officers testified, the district court determined that Guerra's confession was voluntary. We accept a trial court's credibility choices and factual findings based upon live testimony at a suppression hearing unless the findings are clearly erroneous or influenced by an incorrect view of the law. *United States v. Rogers*, 906 F.2d 189, 190 (5th Cir.1990). The district court credited the testimony of the officers present during Guerra's confession to the effect that Guerra desired to cooperate and that he voluntarily made oral statements and signed the written statement. The court's credibility choices and factual findings are not clearly erroneous.

### CALCULATION OF GUERRA'S BASE OFFENSE LEVEL

■ Finally, defendant Guerra contends that his base offense level was calculated in such a way as to violate due process and penalize him for having exercised his right to a trial. He comes to this conclusion by comparing the presentence report prepared at the time of the plea agreement that was rejected by the district court with the presentence report prepared after trial. He complains specifically of three changes. First, while the initial report characterized Guerra as a "minor participant" in the conspiracy, the post-trial report characterized him as an "average participant," increasing his offense level by two points. Second, the initial report deducted two points for acceptance of responsibility, and that deduction was not allowed after trial. Finally, the post-trial report added two points for obstruction of justice, based upon a letter written by Guerra to his girlfriend, Ladawn Page, who was to be a witness at his trial.

"The district court's sentence will be upheld so long as it results from a correct application of the guidelines to factual findings that are not clearly erroneous." *United States v. Rivera*, 898 F.2d 442, 445 (5th Cir.1990) (citing *United States v. Buenrostro*, 868 F.2d 135, 136–37 (5th Cir.1989)). Guerra's argument is frivolous. He cites no authority for his position; nor does he point to any evidence to show that the district court was clearly erroneous in concluding that Guerra was an average participant, that he had not accepted responsibility, or that he had obstructed justice. To the contrary, each of the changes appears to have been proper, because they reflected testimony and evidence adduced at trial. The trial judge was intimately familiar with the facts of this case; the findings that he made in calculating Guerra's base offense level are not clearly erroneous.

### CONCLUSION

Finding no error, we AFFIRM the convictions and sentences of all defendants.

---

9. Guerra was in possession of methamphetamine and precursor chemicals used to manufacture methamphetamine. After having been brought to the Austin Police Department and read his rights, Guerra made incriminating oral and written statements.