UNITED STATES of America, Plaintiff–Appellant,

v.

Jose Alonso JURADO–VALLEJO, Defendant–Appellee.

No. 03–3082.

United States Court of Appeals, Tenth Circuit.

Feb. 10, 2004.

---

Thomas G. Luedke, Nancy Landis Caplinger, Topeka, KS, Richard A. Friedman, Washington, DC, for Plaintiff–Appellant.

Melody Evans, Federal Public Defender, Topeka, KS, for Defendant–Appellee.

Before SEYMOUR, HARTZ, and TYMKOVICH, Circuit Judges.

## ORDER AND JUDGMENT*

HARTZ, Circuit Judge.

Defendant, Jose Alonso Jurado–Vallejo, was indicted on two counts: (1) possession with intent to distribute more than five kilograms of a mixture or substance containing cocaine, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A); and (2) conspiracy to possess with intent to distribute more than five kilograms of a substance containing cocaine, in violation of 21 U.S.C. §§ 846 & 841(b)(1)(A) and 18 U.S.C. § 2. The incriminating evidence, 26 kilograms of cocaine, was obtained in a search of his sport utility vehicle. Ruling that the Kansas state trooper who conducted the search had neither probable cause nor consent to search the vehicle, the district court ordered that the evidence be suppressed. The government appeals the district court's suppression order and the denial of its motion to reconsider. Exercising jurisdiction under 18 U.S.C. § 3731, we remand the case to the district court for further proceedings.

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# I. BACKGROUND

## A. Facts

On the morning of September 22, 2002, Defendant was driving his 2002 Ford Expedition on Interstate 70 in Kansas. Kansas Highway Patrol Trooper Greg Jirak, traveling in the passing lane, approached the vehicle from the rear and noticed a "beauty ring" bracket obscuring the license plate. He testified that he also observed modifications to the vehicle's bed and underbody that suggested the presence of a hidden compartment. In particular, there appeared to be a "lift" lowering the vehicle's underbody three inches from its bed, and the vehicle's bed was squared off, rather than rounded like the factory model. He also said that he could see a seam, which appeared to have been bonded and coated, where the compartment had been added. The compartment was sizeable, running "from the backseats to the rear of the vehicle[,] and the entire width of the vehicle." Aplt.App. at 13.

Jirak testified that in his experience such compartments are used to transport illegal drugs. He had been personally involved in 12 to 15 prior stops in which similar compartments were built into the beds of pickup trucks or sport utility vehicles; on at least six of these occasions, the vehicle had the same type of lift. Although he had not initiated the stop of such a vehicle for about five years prior to his stop of Defendant, he had been involved with the seizure and forfeiture of such a vehicle just a month or two earlier, and his total experience with hidden vehicle compartments used to transport drugs included more than 100 cases.

Jirak stopped Defendant for having an obscured license plate. Defendant concedes that the license-plate violation justified the initial stop. Once Defendant had pulled over, Jirak requested his driver's license and insurance information, which Defendant provided. (It became apparent that Defendant did not speak English, but he and Jirak communicated using hand signals and Jirak's rudimentary knowledge of Spanish.) Jirak did not ask for registration papers, but he noticed that Defendant's vehicle had Mexican license plates issued by the state of Chihuahua. Defendant had a Mexican driver's license, and his vehicle had been insured in Texas two days before, on September 20, 2002. Jirak then returned to his patrol car to write a warning citation for the license-plate violation. As he did so, he looked through the window into the cargo area of Defendant's vehicle and also glanced at its underbody.

Jirak called for backup and then walked to Defendant's vehicle to return his paperwork and give him the citation. After saying "adios," but before Defendant could pull away, he asked him, "puedo registro," Aplt.App. at 21, and Defendant responded affirmatively. Jirak believed that he was requesting permission to search the vehicle; but the district court credited testimony that "puedo registro" is an ungrammatical way of asking for Defendant's registration. Jirak motioned for Defendant to get out of the vehicle and Defendant complied. Jirak stooped down and inspected the rear driver's side wheel well for two to three seconds. He then commenced his search, accessed the hidden compartment through the vehicle's interior, and discovered approximately 26 kilograms of cocaine.

## B. Proceedings Below

In response to Defendant's motion to suppress, the government contended that Defendant consented to the search of his vehicle. The district court granted Defendant's motion, finding that "there was no probable cause to search the vehicle, and no valid consent to search." Aplt.App. at 88.

The government filed a motion for reconsideration, asking the district court to revisit its ruling on consent, and also contending that the search was supported by probable cause. On February 27, 2003, the district court denied the motion. After examining this court's precedents on vehicle searches based on a police officer's suspicion of a hidden compartment, the district court ruled:

> Because Trooper Jirak did not obtain a valid consent he needed probable cause to search the Expedition. While his observations of what appeared to be a modification of the factory bed provided him with reasonable suspicion to further detain and investigate, he did not utilize that detention to confirm his suspicions and obtain probable cause to search. As such, the evidence must be suppressed.

Aplt.App. at 96. The government timely appealed to this court.

## II. ANALYSIS

On appeal the government argues that Jirak had probable cause to search Defendant's vehicle and was not required to conduct a more extensive examination to confirm his observation that the vehicle contained a hidden compartment. When reviewing a district court's ruling on a motion to suppress, "we accept [its] factual findings absent clear error and review *de novo* [its] determination of reasonableness under the Fourth Amendment...." *United States v. Olguin–Rivera,* 168 F.3d 1203, 1204 (10th Cir.1999). When reviewing for clear error its findings of fact, "[t]he credibility of witnesses, the weight to be given evidence, and the reasonable inferences

drawn from the evidence fall within the province of the district court." *United States v. Browning*, 252 F.3d 1153, 1157 (10th Cir.2001) (internal quotation marks omitted).

"Probable cause to search a vehicle is established if, under the *totality of the circumstances* there is a fair probability that the car contains contraband or evidence." *United States v. Nielsen*, 9 F.3d 1487, 1489–90 (10th Cir.1993) (internal quotation marks omitted). "Probable cause is measured against an objective standard"; hence, "[t]he subjective belief of an individual officer as to whether there is probable cause … is not dispositive." *United States v. Davis*, 197 F.3d 1048, 1051 (10th Cir.1999). "In determining whether probable cause exists, an officer may draw inferences based on his own experience." *United States v. Mercado*, 307 F.3d 1226, 1230 (10th Cir.2002).

As this court has previously indicated, "It is well established that evidence of a hidden compartment can contribute to probable cause to search." *Id.; see also United States v. Vasquez–Castillo*, 258 F.3d 1207, 1213 (10th Cir.2001) (finding probable cause to search based on evidence of hidden compartment and smell of raw marijuana); *United States v. Anderson*, 114 F.3d 1059, 1066 (10th Cir. 1997) (holding discovery of "what appeared to be a hidden compartment in the gas tank," along with other evidence, sufficient to furnish probable cause); *United States v. Nicholson*, 17 F.3d 1294, 1297–98 (10th Cir.1994) (considering, among other factors providing probable cause, a "four or five-inch difference in the truck bottom and the floor which indicated a hidden compartment designed to carry contraband"); *United States v. Arango*, 912 F.2d 441, 447 (10th Cir.1990) (finding probable cause to arrest based in part on evidence of hidden compartment).

Whether probable cause to search a vehicle can be based on evidence of a hidden compartment depends on two factors: (1) the probative value of the evidence—that is, the likelihood that there really is a hidden compartment; and (2) the likelihood that a vehicle with a hidden compartment would, in the circumstances, be secreting contraband. In this case the second factor is not a concern. If the vehicle had a hidden compartment, it was highly likely to contain contraband. Jirak testified that he had found evidence of drug activity whenever a hidden compartment had been discovered. This testimony is not challenged on appeal and apparently was credited by the district court. Moreover, this expert experience conforms with common sense; it is hard to conceive of a legitimate use for a large hidden storage compartment in any vehicle, let alone one with the cargo space of a Ford Expedition. We also note that it appeared that the vehicle had recently crossed into this country from Mexico, a common origin of illicit drugs.

The first factor, however, is problematic. It is unclear to us what facts were found by the district court regarding the evidence of a hidden compartment. On one hand, we could read the court's order as crediting all Jirak's testimony but ruling that probable cause could not be established unless he took steps to "confirm" or "verify" conclusively the existence of a hidden compartment. Such a requirement, however, would be incorrect. As the very words suggest, "probable cause" is a matter of probabilities. If there is a "fair probability" that the vehicle contains contraband, *Nielsen*, 9 F.3d at 1489–90, probable cause exists. Because we look to the *totality* of the circumstances, the law does not require greater proof—certainly not conclusive proof—of any particular factor establishing probable cause.

On the other hand, perhaps the district court did not believe, or at least did not fully credit, Jirak's testimony regarding the clarity of his observations or the extent of his knowledge of the structure of motor vehicles and hidden compartments. As Defendant points out on appeal, Jirak's testimony was partially contradicted by the videotape of the stop, he lacked experience observing modifications to 2002 Ford Expeditions, and it would have been difficult to observe modifications while traveling at 65 miles per hour. Without knowing what facts the district court found regarding what Jirak observed and his relevant experience, we cannot resolve whether there was probable cause to search.

In this regard we note one particular concern. As we understand the district court's order, the court did not take into account Jirak's observations when he stooped down to examine the rear wheel well for two to three seconds just before beginning his search. The court may have believed that the observations made at this time were legally irrelevant because Jirak had already decided to search the vehicle based on Defendant's putative consent. But the proper inquiry is what Jirak knew prior to commencing the search, not what he knew prior to obtaining consent. *See United States v. Miller*, 452 F.2d 731, 734 (10th Cir.1971) ("Would the facts available to the officer *at the moment of the ... search* warrant a man of reasonable caution in the belief that the action taken was appropriate?" (quoting *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (emphasis added))). On remand the district court should specifically indicate its findings regarding this observation by Jirak.

Accordingly, we REMAND this case to the district court for more detailed findings regarding Jirak's experience and ob-servations. It may also reconsider its legal conclusions based on the law set forth in this order and judgment. We retain jurisdiction over this appeal pending supplementation of the record by the district court.